THE ATTORNEY GENERAL HAS RECEIVED YOUR REQUEST FOR AN OPINION AND HAS FORWARDED THE MATTER TO ME FOR RESPONSE.
AFTER REVIEWING YOUR REQUEST, THIS OFFICE HAS CONCLUDED THAT IT IS UNABLE TO ISSUE A FORMAL OPINION BECAUSE OF THE PREDOMINANCE OF QUESTIONS OF FACT AND ISSUES OF TRIBAL LAW, NEITHER OF WHICH MAY BE ANSWERED BY AN ATTORNEY GENERAL'S OPINION. HOPEFULLY, HOWEVER, YOU WILL FIND THE FOLLOWING REMARKS OF SOME ASSISTANCE IN ADDRESSING THE ISSUES OUTLINED IN YOUR LETTER.
AS INDICATED IN YOUR LETTER, YOUR IMMEDIATE CONCERNS WERE TRIGGERED BY THE APPOINTMENT OF MS. DONAGHEY TO THE BOARD OF COMMISSIONERS ("BOARD") OF THE HOUSING AUTHORITY OF THE CADDO TRIBE ("CHA"). DONAGHEY IS THE "CADDO TRIBAL VICE-CHAIRPERSON". IT APPEARS THAT DONAGHEY HAS BEEN APPOINTED TO THE BOARD BY ELMO CLARK, THE CADDO TRIBAL CHAIRMAN. WHILE YOUR LETTER IS NOT SPECIFIC ON THIS POINT, IT ALSO APPEARS THAT DONAGHEY HAS ALREADY TAKEN THE OATH OF OFFICE.
THE BOARD'S OBJECTION TO DONAGHEY IS TWOFOLD. FIRST, THE BOARD BELIEVES THAT DONAGHEY IS PERSONALLY UNFIT TO SERVE AS COMMISSIONER. THIS STEMS FROM THE FACT THAT (1) DONAGHEY HAS DEFAULTED UNDER A PREVIOUS HUD PROGRAM AND HAS BEEN THE SUBJECT OF AN OF EVICTION PROCEEDING; (2) DURING THIS TIME, DONAGHEY ACQUIRED OWNERSHIP OF OTHER HOMES IN THE WASHITA COMMUNITY OF CADDO COUNTY; AND (3) THE BOARD FEELS THAT DONAGHEY'S "SOLE PURPOSE IN BEING A COMMISSIONER IS AS A PERSONAL VENDETTA AND ACTIONS SHE COULD INITIATE WOULD BE ARBITRARY AND CAPRICIOUS."
SECOND, THE BOARD OBJECTS TO DONAGHEY'S CONCURRENT ROLES AS THE "CADDO TRIBAL VICE-CHAIRPERSON" AND CHA COMMISSIONER. AS TRIBAL VICE-CHAIRPERSON, DONAGHEY SITS ON THE BODY THAT APPOINTS THE CHA COMMISSIONERS TO THE BOARD. I ASSUME THAT THIS BODY IS THE "TRIBAL COUNCIL". THE BOARD POINTS OUT THAT THE OATH OF OFFICE WHICH HAS TRADITIONALLY BEEN ADMINISTERED TO COMMISSIONERS REQUIRES THEM TO STATE THAT THEY ARE NOT A MEMBER OF THIS "TRIBAL COUNCIL".
IN VIEW OF THE FOREGOING, THE BOARD FEELS THAT THE APPOINTMENT OF DONAGHEY IS IRRATIONAL AND PERHAPS ILLEGAL.
A RELATED PROBLEM IS THE RECENT APPOINTMENT OF LYMAN KIONUTE AND MARY GUNN TO THE CHA BOARD. BOTH HOLD CADDO TRIBAL OFFICES. BOTH WERE APPOINTED BY THE TRIBAL CHAIRMAN, ELMO CLARK. THE BOARD BELIEVES THAT THE PURPOSE OF THESE APPOINTMENTS IS TO BRING THE CHA UNDER THE SUPERVISION OF THE CADDO TRIBAL COUNCIL. YOUR LETTER ALSO INDICATES THAT THE CHA HAD NOT YET RECEIVED THE REQUIRED CERTIFICATE OF APPOINTMENT AND SIGNED OATHS OF OFFICE FOR THESE TWO APPOINTEES.
LEGAL ISSUES; ANALYSIS.
A. QUALIFICATIONS OF OFFICE.
TITLE 63 O.S. 1058 (1989) SETS FORTH THE QUALIFICATIONS FOR HOUSING AUTHORITY COMMISSIONERS. THESE ARE: THE APPOINTEE MUST BE APPOINTED BY THE GOVERNING BODY; AND (2) THE APPOINTEE MUST TAKE "THE OFFICIAL OATH OF OFFICE PRESCRIBED BY STATUTE OR ORDINANCE FOR ELECTED OFFICIALS OF THE COUNTY OR CITY, AS THE CASE MAY BE."
CLEARLY, THE APPOINTMENT OF DONAGHEY AND THE OTHER APPOINTEES BY THE CADDO TRIBAL CHAIRMAN MEETS THE FIRST CRITERION. AS TO THE SECOND, IT APPEARS THAT DONAGHEY HAS ALREADY TAKEN THE OATH OF OFFICE AND THAT THE OTHER APPOINTEES WILL, IF THEY HAVE NOT ALREADY, DO THE SAME. ACCORDINGLY, DONAGHEY CURRENTLY QUALIFIES UNDER 1058, AND THE OTHERS MAY SOON QUALIFY.
WITH REGARD TO THE HUD FORECLOSURE OF DONAGHEY AND HER ACQUISITION OF OTHER PROPERTIES, I CAN FIND NO REASON WHY THIS SHOULD IMPEDE HER ABILITY TO SERVE AS A COMMISSIONER ON THE BOARD. THERE MAY BE HUD RESTRICTIONS ON THIS SUBJECT, BUT THAT IS NOT A MATTER OF OKLAHOMA LAW AND IS, THEREFORE, BEYOND THE SCOPE OF THIS OPINION.
WITH REGARD TO THE BOARD'S CONCERN THAT DONAGHEY IS ONLY PURSUING A "VENDETTA", I NOTE THAT 1058 AUTHORIZES THE "GOVERNING BODY", AND NOT THE BOARD ITSELF, TO APPOINT NEW COMMISSIONERS. THUS, THE DISCRETION TO INQUIRE INTO THE MOTIVES OR PURPOSES OF POTENTIAL APPOINTEES RESTS WITH THE GOVERNING BODY — IN THIS CASE THE TRIBAL COUNCIL. SECTION 1058 DOES NOT REQUIRE THAT PROPOSED APPOINTEES BE APPROVED BY THE BOARD PRIOR TO SEATING, NOR DOES IT GRANT THE BOARD VETO POWER OVER PROPOSED APPOINTEES. IN SUM, I DO NOT THINK THE LAW ALLOWS THE BOARD TO PREVENT DONAGHEY FROM PARTICIPATING IN ITS FUTURE ACTIONS.
B. DUAL ROLES.
OKLAHOMA LAW PROHIBITS ONE PERSON FROM SIMULTANEOUSLY HOLDING TWO OFFICES IF THOSE OFFICES ARE "UNDER THE LAWS OF THE STATE." 51 O.S. 6 (DUAL OFFICE HOLDING). THIS PROHIBITION APPLIES TO HOUSING AUTHORITY COMMISSIONERS. A.G. OPIN. NO. 73-114 (SAME PERSON CANNOT SERVE AS HOUSING AUTHORITY COMMISSIONER AND MEMBER OF BOARD OF COUNTY COMMISSIONERS). HOWEVER, THIS SECTION DOES NOT APPLY TO DONAGHEY HERE BECAUSE HER SECOND OFFICE, VICE-CHAIRPERSON OF THE CADDO TRIBE, IS DERIVED FROM THE AUTHORITY OF THE CADDO NATION; IT IS NOT AN OFFICE ARISING UNDER THE "LAWS OF THIS STATE". THEREFORE, THE 6 PROHIBITION DOES NOT COME INTO PLAY. WHETHER THERE IS SOME TRIBAL LAW REQUIREMENT THAT DONAGHEY VACATE HER TRIBAL OFFICE UPON ACCEPTING A SEAT ON THE CHA BOARD IS A QUESTION OF TRIBAL LAW THAT CANNOT BE ANSWERED BY AN ATTORNEY GENERAL'S OPINION.
A RELATED PROBLEM IS THE FACT THAT THE OATH OF OFFICE WHICH HAS TRADITIONALLY BEEN USED BY THE BOARD REQUIRES THE APPOINTEE TO DECLARE THAT THEY ARE NOT A MEMBER OF THE TRIBAL COUNCIL. DONAGHEY'S CURRENT POSITION AS TRIBAL VICE-CHAIRPERSON APPEARS TO BE A CLEAR VIOLATION OF THE OATH. HOWEVER, THE LAW DOES NOT EXPRESSLY PROVIDE THE BOARD WITH A MEANS TO REMEDY THIS APPARENT VIOLATION. INSTEAD, THE OKLAHOMA LEGISLATURE HAS VESTED THE POWER TO REMOVE COMMISSIONERS IN THE "GOVERNING BODY". 63 O.S. 1060. I ASSUME THAT IN THIS CASE, THE "GOVERNING BODY" IS THE TRIBAL COUNCIL. THUS THE AUTHORITY TO CORRECT A VIOLATION OF THE OATH OF OFFICE BY DONAGHEY RESTS WITH THE TRIBAL COUNCIL.
THE COURTS OF THIS STATE ARE AUTHORIZED TO EXERCISE JURISDICTION TO DETERMINE DISPUTES CONCERNING THE OKLAHOMA HOUSING AUTHORITY ACT AS IT APPLIES TO INDIAN HOUSING AUTHORITIES. HOUSING AUTHORITY OF THE CHOCTAW NATION V. CRAYTOR, 600 P.2D 314 (OKL. 1979). THUS IN THE EVENT THAT THE TRIBAL COMMISSION REFUSES TO ACT WHEN FACED WITH MISCONDUCT BY A COMMISSIONER, INCLUDING DONAGHEY, I RECOGNIZE, WITHOUT SUGGESTING, THAT IT MAY BE POSSIBLE FOR THE
1. I HAVE NO INFORMATION ESTABLISHING THAT THE OATH USED BY THE BOARD IS THE SAME OATH THAT IS "PRESCRIBED BY STATUTE OR ORDINANCE OR THE APPROPRIATE INDI AN ANALOG FOR ELECTED OFFICIALS" AS REQUIRED BY 1058; BUT, FOR THE PURPO SES OF THIS DISCUSSION, I WILL ASSUME THAT THE "TRADITIONAL" OATH FULFILLS THE 1058 REQUIREMENT.
BOARD TO INITIATE MANDAMUS PROCEEDINGS TO COMPEL THE TRIBAL COUNCIL TO ACT. HOWEVER, THIS EVENTUALITY RESTS UPON FACTUAL ISSUES NOT APPROPRIATE TO CONSIDERATION IN AN ATTORNEY GENERAL'S OPINION.
CONFLICT OF INTEREST.
THE REAL CONFLICT OF INTEREST PROBLEM HERE ARISES FROM THE FACT THAT DONAGHEY OWNS LOCAL PROPERTY WHICH MAY POTENTIALLY BECOME THE SUBJECT OF A CHA PROJECT. THIS PRESENTS THE POSSIBILITY THAT DONAGHEY WOULD BE ABLE TO VOTE ON MATTERS AFFECTING HER PERSONAL PROPRIETARY INTERESTS. HOWEVER, 63 O.S. 1059 ADDRESSES THIS CONCERN. SECTION 1059(A) PROVIDES THAT IN THE EVENT A COMMISSIONER OWNS ANY INTEREST, DIRECTLY OR INDIRECTLY, IN ANY PROJECT OR ANY PROPERTY INCLUDED IN ANY PROJECT OR IN ANY CONTRACT RELATING TO A PROJECT, THEN THAT COMMISSIONER MUST (1) DISCLOSE THE INTEREST TO THE HOUSING AUTHORITY; (2) ENTER THE DISCLOSURE IN THE MINUTES OF THE HOUSING AUTHORITY; AND (3) ABSTAIN FROM PARTICIPATING IN ANY ACTION RELATING TO THE PROPERTY. THE FAILURE OF DONAGHEY TAKE ANY OF THESE STEPS WOULD CONSTITUTE "MISCONDUCT IN OFFICE". 630.S. 1059(A). HOWEVER, WHETHER ANY OF THIS ACTUALLY HAS OCCURRED IS A QUESTION OF FACT.
D. ELIMINATION/SUPERVISION OF THE BOARD. THROUGH YOUR LETTER, THE CURRENT BOARD INDICATES THAT THE REASON BEHIND THE APPOINTMENT OF DONAGHEY AND THE OTHER TWO TRIBAL OFFICERS, KIONUTE AND GUNN, IS AN ATTEMPT TO BRING THE CHA UNDER TRIBAL CONTROL AND ELIMINATE THE NEED FOR THE BOARD OF COMMISSIONERS. IN RESPONSE TO THE SUGGESTION THAT THE APPOINTMENTS WOULD AFFECT THE "NEED" FOR A BOARD OF COMMISSIONERS IN ANY STRUCTURAL SENSE, I NOTE THAT 63 O.S. 1058 AUTHORIZES THE HOUSING AUTHORITIES TO "EXERCISE POWERS" AND DIRECTS THAT THE "POWERS OF EACH AUTHORITY SHALL BE VESTED IN THE COMMISSIONERS THEREOF". THUS, HERE, THE CHA MAY ACT ONLY THROUGH ITS BOARD OF COMMISSIONERS. CONSEQUENTLY, THE BOARD CANNOT BE ELIMINATED WITHOUT ALSO ELIMINATING THE CHA AS A MEANINGFUL ENTITY. HOWEVER, WHETHER THERE IS A "NEED" FOR A TRIBAL HOUSING AUTHORITY IS A DECISION WHICH 1057 EXPRESSLY LEAVES TO THE GOVERNING COUNCIL OF THE TRIBE.
AS TO THE ISSUE OF "SUPERVISION" OF THE BOARD, I CAN FIND NOTHING IN THE STATUTE OR INTERPRETIVE CASE LAW WHICH ADDRESSES THE DEGREE OF CONTROL THAT THE GOVERNING BODY OF A TRIBE MAY PROPERLY EXERCISE OVER ITS HOUSING AUTHORITY. TO THE EXTENT THAT THE GOVERNING BODY WISHES TO SELECT AND APPOINT COMMISSIONERS WHOSE PERSONAL DISPOSITION IS SUCH THAT THEY WILL ACCEPT TRIBAL SUPERVISION RATHER THAN EXERCISE INDEPENDENT JUDGMENT, THE TRIBE IS ENTITLED TO DO SO. THE ONLY CONFINING FACTOR ON THIS POWER IS THAT 1058 LIMITS THE TOTAL NUMBER OF COMMISSIONERS TO FIVE, SO THAT A TRIBAL COUNCIL MAY NOT "PACK" A BOARD. ACCORDINGLY, THE THREE NEW APPOINTEES WILL NOT BE "ILLEGAL" SO LONG THE TOTAL NUMBER OF COMMISSIONERS, AFTER THE APPOINTMENTS, DOES NOT EXCEED FIVE.
(K. W. JOHNSTON)